[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11013
Non-Argument Calendar
_____

Agency No. A202-054-722

ANGELINA PEDRO-PABLO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 26, 2018)

Before WILLIAM PRYOR, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Angelina Pedro-Pablo, a native and citizen of Guatemala, petitions for review of the Board of Immigration Appeals' order affirming the Immigration

Judge's denial of her application for asylum pursuant to § 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).   After careful review, we deny her petition.

## I

Ms. Pedro-Pablo was born in Guatemala and raised in a small, primarily indigenous village called Pecano Grande.  She only speaks Acateno, a Mayan dialect, and is a practicing Catholic.  On November 25, 2014, Ms. Pedro-Pablo, then 29 years old, left Guatemala for the United States, transported by human smugglers.  She entered the United States near San Ysidro, California on December 7, 2014, and was apprehended by the Department of Homeland Security that same day.  The government sought removal and, in response, Ms. Pedro-Pablo filed an application for asylum and withholding of removal under the INA and for relief under the CAT in November of 2015.

In support of her application, Ms. Pedro-Pablo stated that, in 2013 and 2014, a man she knew as Jose Pedro Miguel told her he was going to kill her if she "did not want to be with him anymore" and that he was "there to bother" her.  This harassment took place along the road that Ms. Pedro-Pablo would take to Sunday

2

church services.  Ms. Pedro-Pablo reported that Jose Pedro Miguel was not physically abusive, but abused her verbally.  She noted that he made repeated threats to kill her after she refused to marry him and that she was also afraid of being kidnapped because kidnapping is prevalent in Guatemala.

Ms. Pedro-Pablo had a merits hearing on her application in July of 2016.  In addition to the events described above, Ms. Pedro-Pablo testified that Jose Pedro Miguel was from a different village far away from hers and would cross paths with her only on the route to church beginning in 2013.  The real problems began, she says, in 2014 when he confronted her and said that if she refused to marry him, he would find her and kill her.  Ms. Pedro-Pablo testified that she told her father about this instance and that she wanted to leave Guatemala.  Over the course of 2014, Jose Pedro Miguel harassed Ms. Pedro-Pablo five or six times.

Consistent with her application, she testified that Jose Pedro Miguel never physically assaulted her.  At the merits hearing, Ms. Pedro-Pablo added that Jose Pedro Miguel threatened her with a machete and that he always carried one with him.  She also testified that, after she fled to the United States, Jose Pedro Miguel came to her father's home and told him that he would find and kill her.  Ms. Pedro-Pablo also explained that her stepmother, Ramona, was physically abusive towards her.  Ms. Pedro-Pablo's counsel asked why this abuse continued into adulthood, but the government's attorney objected to the relevance of the question.  The IJ

3

sustained the objection and counsel did not ask any further questions about Ramona.

The IJ denied Ms. Pedro-Pablo's application for relief for a variety of reasons. First, the IJ found that Ms. Pedro-Pablo had embellished her testimony and was not credible based on several substantial and material inconsistencies between the application and hearing testimony. Second, the IJ found that she had failed to meet her burden to prove that she suffered past persecution or had a well-founded fear of future persecution on account of a statutorily protected ground. Because she failed to establish any nexus between a protected ground—such as race, religion, or membership in a particular social group—and her claim, she could not obtain relief. For similar reasons, the IJ found Ms. Pedro-Pablo was not eligible for protection under the CAT.

The BIA entered an order affirming the IJ's denial of Ms. Pedro-Pablo's application for asylum, withholding of removal, and CAT claim. The BIA agreed with the adverse credibility determination made by the IJ and also concluded that Ms. Pedro-Pablo did not establish a nexus between her claims any protected ground. She timely filed a petition for review of these determinations in our court.

## II

Before addressing Ms. Pedro-Pablo's arguments on the merits, we asses our subject-matter jurisdiction *de novo*. *See Indrawati v. U.S. Att'y Gen.*, 779 F.3d

4

1284, 1297 (11th Cir. 2015). We may review a final order of removal only if a petitioner has exhausted all administrative remedies available as a matter of right. *See* 8 U.S.C. § 1252(d)(1); *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016). "[W]hen a petitioner has neglected to assert an error before the BIA that [s]he later attempts to raise before us, the petitioner has failed to exhaust [her] administrative remedies." *Jeune*, 810 F.3d at 800 (citing *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006)).

To exhaust a claim before the BIA, a petitioner must have previously argued "the core issue now on appeal" before the BIA. *See Indrawati*, 779 F.3d at 1297. Although "exhaustion does not require a petitioner to use precise legal terminology or provide well-developed arguments to support [a] claim; it does require that the petitioner provide information sufficient to enable the BIA to review and correct any errors below." *Jeune*, 810 F.3d at 800 (citations and quotation marks omitted).

Ms. Pedro-Pablo asserts that her due process rights were violated when the IJ sustained the government's relevance objection to her counsel's question about her stepmother's abuse. She argues that this prevented her from fully presenting her case, but made no such argument before the BIA. We have acknowledged that some due process claims and constitutional challenges may not require exhaustion when the BIA does not have power to adjudicate those claims. *See Amaya-Artunduaga*, 463 F.3d at 1251; *Sundar v. I.N.S.*, 328 F.3d 1320, 1325 (11th Cir.

5

2003). But we have also held that a petitioner must exhaust due process claims when the BIA is capable of providing a remedy. *See id.* Ms. Pedro-Pablo could have received a remedy in this case. If her due process claim had merit, the BIA could have remanded the case to the IJ for further factual development. *See* 8 C.F.R. § 1003.1(d)(3)(iv). Therefore, her "allegation of a due process violation—that [she] was denied a full and fair hearing before a neutral factfinder—is precisely the kind of procedural error which requires exhaustion." *Amaya-Artunduaga*, 463 F.3d at 1251. Because her due process claim is unexhausted, we lack jurisdiction to consider it.

### III

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision. *See Jeune*, 810 F.3d at 799; *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). On appeal from the BIA's decision, we review legal questions *de novo*. *See Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010). We review factual determinations under the substantial evidence test. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004). The usual rules regarding proper presentation of issues for purposes of waiver and abandonment also apply to petitions for review. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (holding that issues not raised on appeal are deemed abandoned).

6

Agreeing with the IJ's decision, the BIA denied Ms. Pedro-Pablo's request for asylum and withholding of removal under the INA for two reasons. First, the BIA found that the IJ's adverse credibility determination was not clearly erroneous. Second, the BIA noted that Ms. Pedro-Pablo failed to challenge the IJ's determination that she did not establish a nexus to a protected ground required under the INA. *See* 8 U.S.C. § 1158(b)(1)(B)(i) ("[T]he applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant."); *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013) (denying petition where "proposed family member group" was not a particular social group under meaning of INA).

Ms. Pedro-Pablo only challenges the first of these two grounds. Because she has failed to properly challenge the BIA's nexus determination—her due process claim, as we have held, is not exhausted—she has abandoned the argument. *See Sepulveda*, 401 F.3d at 1228, n.2. Her failure to challenge this independent ground on appeal requires us to deny her petition. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its

7

judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."). [1]

## IV

Ms. Pedro-Pablo did not contest the BIA's alternative finding that she failed to satisfy the nexus requirement. Because this alone requires denial of her petition, we do not address her claim that substantial evidence did not support the BIA's and IJ's adverse credibility determination. Without jurisdiction over her unexhausted due process claim, we cannot consider that either. Accordingly, we deny her petition for review.

**PETITION DENIED**.

---

[1] Similarly, Ms. Pedro-Pablo has abandoned challenge the determination that she failed to establish eligibility for protection under the CAT by failing to raise it on appeal. *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) ("[T]he burden of proof is on the applicant for withholding of removal under the CAT to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.") (alterations omitted); *Sepulveda*, 401 F.3d at 1228, n.2 (holding that failure to challenge denial of relief under the CAT abandoned the issue).